## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

MYSTIC DAYS, LLC,
    *Plaintiff,*

    v.                                               No. 3:19-cv-01953 (JAM)

CHHATRALA MYSTIC, LLC, *et al.*,
    *Defendants.*

### ORDER DENYING MOTION TO DISMISS

This lawsuit involves claims arising from the sale of a Days Inn franchise hotel in Mystic, Connecticut. According to the complaint, one of the defendants—Shivam Patel—fraudulently caused the hotel to be advertised for sale by means of a false representation that the hotel was undergoing remodeling and renovation.

Patel lives in California, and he has moved to dismiss for lack of personal jurisdiction. He claims that the courts of Connecticut have no jurisdiction over him because he never came to Connecticut for any of his business dealings with respect to the hotel and also because any business dealings he engaged in with respect to the hotel were in a corporate capacity rather than a personal capacity.

I will deny his motion. First, I conclude that Patel is subject to service of process under Connecticut's long-arm jurisdiction statute. *See* Conn. Gen. Stat. § 52-59b(a). Even if Patel never journeyed to Connecticut, the allegations and evidence of his involvement in the management and alleged fraudulent sale of a hotel property in Connecticut is enough to qualify this action as one that involves a claim arising from the transaction of business in Connecticut. *See* Conn. Gen. Stat. § 52-59b(a)(1). Although Patel invokes the "fiduciary shield" doctrine to argue that he cannot be personally subject to suit for actions that he took on behalf of his company, I conclude

1

that Connecticut law does not recognize the fiduciary shield doctrine as a limitation on the scope of its long-arm jurisdiction statute.

Second, I conclude that the exercise of jurisdiction over Patel would not violate constitutional due process. Having allegedly enmeshed himself in the management and sale of a hotel property that is located in Connecticut, Patel could reasonably anticipate that he would be subject to the jurisdiction of Connecticut courts for causes of action arising from this activity involving real property in Connecticut.

BACKGROUND

The plaintiff is a limited liability company named Mystic Days, LLC ("Mystic"). The three defendants include two limited liability companies—Chhatrala Mystic, LLC ("Chhatrala") and Kherva, LLC ("Kherva")—as well as Patel, who is alleged to be a member of both Chhatrala and Kherva.

According to the third amended complaint, Mystic bought the hotel property from Chhatrala in April 2018 for $5.8 million. Doc. #17 at 4. The complaint alleges in relevant part that Patel "at all times represented to [Mystic] that the hotel was under renovations" and that Mystic relied on these representations when buying the hotel. *Ibid.* But Mystic later learned that the hotel was not under renovation and required renovations which would cost Mystic about $650,000. *Id.* at 5. Patel allegedly "caused the hotel to be advertised for sale as a 'current remodel and renovation underway,'" advertising representations that he knew at the time to be false. *Ibid.*

Patel now moves to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2). He argues that he did not have sufficient contacts with Connecticut to permit a court to exercise jurisdiction over him in Connecticut.

2

## DISCUSSION

Rule 12(b)(2) of the Federal Rules of Civil Procedure allows a defendant to move to dismiss for lack of personal jurisdiction. As the Second Circuit has explained, there are generally three reasons why a federal court may lack personal jurisdiction over any particular defendant. First, the defendant may not have been served with process in technical compliance with the procedures required for serving a summons and complaint. Second, if the defendant lives outside the State where the federal court is located, he may not be subject under state law to the "long-arm" jurisdiction of the courts of that State. Third, the exercise of jurisdiction over a defendant who lives outside the State where a court is located may not comport with constitutional principles of fairness and due process. *See generally U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 149 (2d Cir. 2019); *Reich v. Lopez*, 858 F.3d 55, 63 (2d Cir. 2017); *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 327 (2d Cir. 2016).

Here, Patel does not meaningfully dispute the technical validity of the manner in which he was served with process.[1] Instead, he argues that he was not subject to service of process under Connecticut's long-arm statute and that it would otherwise violate constitutional due process if he were required to defend against this lawsuit in Connecticut. I will consider these two arguments in turn.

---

[1] Because Mystic was unable to personally serve Patel, I granted its motion to allow service of process on Patel by publication. Doc. #23. Patel's motion to dismiss does not challenge the propriety of this order. It suggests only in passing that the certificate of service "failed to confirm that a copy of the [complaint] had been mailed to Patel," Doc. #27 at 12, when in fact the docket reflects that a copy of the complaint and the docket sheet were mailed by first-class mail to the addresses listed in Mystic's supporting affidavit, Doc. #24 at 1, as required by my order authorizing service by publication with mailing to Patel at his three known addresses in California, Doc. #23. More generally, the legal argument in Patel's motion to dismiss focuses solely on the Connecticut long-arm statute and principles of constitutional due process; because Patel fails to make any legal argument to challenge the procedural propriety of the manner in which he was served with process, I conclude that any such claim of technical defect has been waived.

### Connecticut long-arm statute

A long-arm statute allows the courts of one State to exercise jurisdiction over individuals or entities that are residents or citizens of another State. Although long-arm statutes may be creations of state law, they matter to federal courts because the Federal Rules of Civil Procedure generally condition the "establish[ing of] personal jurisdiction over a defendant" on whether the defendant "is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." Fed. R. Civ. P. 4(k)(1)(A).

Among other grounds, Connecticut's long-arm statute allows for the exercise of jurisdiction "[a]s to a cause of action arising from" the act of a "nonresident individual ... who in person or through an agent ... [t]ransacts any business within the state." Conn. Gen. Stat. § 52-59b(a)(1). Thus, as the Connecticut Supreme Court has noted, "a court possesses personal jurisdiction over a nonresident individual with respect to a cause of action arising from any business transacted in this state by that individual." *Ryan v. Cerullo*, 282 Conn. 109, 118 (2007). The transaction of business for purposes of the long-arm statute may "embrace a single purposeful business transaction," and even "a nonresident individual who has not entered this state physically nevertheless may be subject to jurisdiction in this state under § 52–59b(a)(1) if that individual has invoked the benefits and protection of Connecticut's laws by virtue of his or her purposeful Connecticut related activity." *Id.* at 119, 120 (internal citations omitted).

Although Patel insists that he never came to Connecticut for any reason related to the Days Inn in Mystic, the record before me sufficiently shows that—regardless whether he ever entered Connecticut—the fraud claim against him arises from his transacting of business here in Connecticut. This record includes numerous emails during the course of negotiations to sell the hotel in which he described his active participation in the management of the Days Inn. Patel

4

stated in one email that he has been "actively managing the subject property since August 2013." Doc. #31-1 at 23. In another email, Patel listed the Days Inn in Mystic as one of the properties he "owns and manages." *Id.* at 28. And in yet another email that was sent in response to a request for information about "[h]ow active are you involved in the property," Patel listed numerous "responsibilities" that he undertakes from California, including bookkeeping, tax preparation, payroll, occupancy tax, human resources, budgeting, and renovation management for the hotel building. *Id.* at 29.[2]

The record further shows that Patel played an active role in the negotiations to sell the hotel. He entered into sales negotiations on behalf of the selling entity beginning in December 2017 with Christopher Capozzoli, who was acting on behalf of the buying entity. Doc. #31-1 at 2 (¶ 9). The negotiations involving Patel extended for several months. *Id.* at 2-7. As relevant to the claim that Patel engaged in fraud with respect to misrepresenting the hotel's renovations, among the documents Patel provided to Capozzoli was a list of renovations and costs. *Id.* at 3 (¶ 14) & 18.

All in all, the record shows that Patel was transacting business in Connecticut by reason of his active management and effort to sell a hotel property that was located in Connecticut. Indeed, a critical fact here is that both the claim and business activity at issue involved the sale of real property in Connecticut. Whenever parties negotiate the sale of real property that is located in Connecticut, they inevitably count on the protection of Connecticut law with respect to the transaction in a manner that qualifies the activity as the transaction of business in Connecticut. If the claim in a lawsuit arises from this business activity, then it is enough to meet the requirement

---

[2] Patel also stated in this email that he has been responsible for "[v]isits" to the hotel building "prior to Franchise QA," Doc. #31-1 at 29, a statement that contradicts his own declaration that he has "never traveled to Connecticut for business." Doc. #28 at 6.

of Conn. Gen. Stat. § 52-59b(a)(1) that the cause of action arises from the transaction of any business in Connecticut.

The Connecticut Supreme Court's decision in *Zartolas v. Nisenfeld*, 184 Conn. 471 (1981) is instructive. The issue there was whether a defendant who was in Iowa when he executed a warranty deed for real property located in Connecticut could be said for purposes of the Connecticut long-arm statute to be transacting business in Connecticut. The court said yes. It reasoned that "[b]y owning land in Connecticut the defendants invoked the benefits and protection of Connecticut's laws of real property, including as an incident of ownership the right to sell the property," and "the fundamental incidents of this warranty deed [for land in Connecticut] render the defendants' purposeful execution of it [while the defendants were in Iowa] a 'transaction of any business within this state'" under Conn. Gen. Stat. § 52-59b(a)(1). *Id.* at 475-76.

The same reasoning applies here. Notwithstanding that Patel may have been in California when he engaged in his management of and negotiations to sell the hotel, the location of the hotel property in Connecticut meant that he was transacting business in Connecticut. The very nature of a deal to sell a piece of real property in Connecticut meant that he "invoked the benefits and protection of Connecticut's laws by virtue of his or her purposeful Connecticut related activity." *Ryan*, 282 Conn. at 120 (citations omitted).[3]

Patel makes a conclusory objection to the authenticity of the emails and documents submitted by Mystic. Doc. #32 at 11. But he does not suggest that these documents were fabricated or claim that he never sent the many emails at issue. At this early pleadings stage of

---

[3] It is telling as well that an alternative ground for personal jurisdiction under the Connecticut long-arm statute is if the cause of action arises from the act of a person who "owns, uses or possesses any real property situated within the state." Conn. Gen. Stat. § 52-59b(a)(4). Because Mystic does not urge this ground for long-arm jurisdiction, I have no occasion to consider it at this time.

the litigation, Mystic has more than carried its factual burden. "Where, as here, a court relies on pleadings and affidavits, rather than conducting a full-blown evidentiary hearing, the plaintiff need only make a prima facie showing that the court possesses personal jurisdiction over the defendant," and "[i]n assessing whether the plaintiff has made that showing, the court must construe the pleadings and affidavits in the light most favorable to the plaintiff, resolving all doubts in its favor." *JCorps Int'l, Inc. v. Charles & Lynn Schusterman Family Found.*, 828 F. App'x 740, 742 (2d Cir. 2020) (internal quotations and brackets omitted).[4]

Patel further argues that any involvement he had with the hotel was not in his *personal* capacity but in his *corporate* capacity as one of several members of Chhatrala. Doc. #32 at 4. To this end, he invokes the "fiduciary shield" doctrine—a rule that exempts a non-resident individual from being subject to local jurisdiction for actions that the non-resident individual took in a corporate representative capacity. *See generally* Robert A. Koenig, *Personal Jurisdiction and the Corporate Employee: Minimum Contacts Meet the Fiduciary Shield*, 38 Stan. L. Rev. 813 (1986).

Federal and state courts in Connecticut have divided on the question of whether the fiduciary shield doctrine applies to the Connecticut long-arm jurisdiction statute.[5] Because the

---

[4] *See also Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013) (discussing the "considerable procedural leeway" of a district court to consider evidence with respect to a motion to dismiss under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction and noting that "[p]rior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith, legally sufficient allegations of jurisdiction"). If there is indeed some basis to dispute the validity or admissibility of the documentary materials submitted by Mystic, then Patel may proceed after conducting discovery by way of motion for summary judgment under Fed. R. Civ. P. 56 or by way of request for an evidentiary hearing on the issue of personal jurisdiction. *See id.* at 85.

[5] *Compare Ferrara v. Munro*, 585 B.R. 269, 287-88 (D. Conn. 2018) (applying the rule and citing cases); *Cadle Co. v. Sydorowycz*, 2001 WL 1336375, at *4 (Conn. Super. Ct. 2001) (same), with *Hybrid Athletics, LLC v. Hylete, LLC*, 2019 WL 4143035, at *5 (D. Conn. 2019) (declining to apply the rule and citing cases); *Under Par Assocs., LLC v. Wash Depot A., Inc.*, 47 Conn. Supp. 319 (2001) (same).

Connecticut Supreme Court has yet to address the question, I must predict how it would rule on this issue of state law. *See Yukos Capital S.A.R.L. v. Feldman*, 977 F.3d 216, 241 (2d Cir. 2020).

I predict for several reasons that the Connecticut Supreme Court would decline to apply the fiduciary shield doctrine to limit the scope of the Connecticut long-arm statute. To start, the plain words of the long-arm statute do not recognize any distinction between actions that a person takes in their personal capacity and actions that they take in their corporate capacity; the long-arm statute conditions the exercise of personal jurisdiction simply on whether a cause of action arises from an individual's "[t]ransact[ing] any business within the state." Conn. Gen. Stat. § 52-59b(a)(1). The most natural reading of these words is that long-arm jurisdiction extends over any person who transacts business in Connecticut without regard to whether the person is transacting business on behalf of a company or some other entity or principal.

The Connecticut long-arm statute is patterned on New York's long-arm statute, *see Zartolas*, 184 Conn. at 474, and New York's highest court has in turn convincingly rejected the fiduciary shield doctrine as a limitation on New York's long-arm statute. *See Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460 (1988). The New York Court of Appeals reasoned in part that "[n]othing in the statute's language or the legislative history relating to it suggests that the Legislature intended to accord any special treatment to fiduciaries acting on behalf of a corporation or to insulate them from long-arm jurisdiction for acts performed in a corporate capacity." *Id.* at 470.

The New York Court of Appeals noted as well that the rule is not "necessary as a matter of fairness," because "[t]he equitable concerns which motivated development of the doctrine are amply protected by constitutional due process requisites which guarantee that jurisdiction over a nonresident will be sustained only when the demand for his presence is reasonable and consistent

with notions of fair play and substantial justice." *Ibid*. The court explained how the U.S. Supreme Court has "held that it is constitutionally permissible to subject an individual participating in a transaction in a foreign State to long-arm jurisdiction even though his contacts with the forum were made in a corporate capacity." *Id*. at 471 (citing *Calder v. Jones*, 465 U.S. 783, 790 (1984) and *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984)).

Thus, as the D.C. Circuit has recently ruled, "courts cannot ignore contacts made by the individual just because they were made in his or her capacity as an employee or corporate officer." *Urquhart-Bradley v. Mobley*, 964 F.3d 36, 46 (D.C. Cir. 2020). "Contacts are contacts and must be counted," and "the Due Process Clause does not incorporate the fiduciary shield doctrine." *Ibid*.

On top of all this, "[i]t is well settled under Connecticut law that when an officer of a corporation makes fraudulent misrepresentations he is personally liable, regardless of whether or not he was acting in his corporate capacity." *Wise v. Lincoln Logs, Ltd.*, 889 F. Supp. 549, 553 (D. Conn. 1995); *Scribner v. O'Brien, Inc.*, 169 Conn. 389, 404 (1975) (same). If that is true, why would it make sense to construe the Connecticut long-arm statute to embrace a principle of *jurisdictional* limitation on grounds that Connecticut rejects as a matter of *substantive* liability law? It makes no sense at all.

Accordingly, I conclude that Mystic has adequately established a basis for long-arm jurisdiction over Patel pursuant to Conn. Gen. Stat. § 52-59b(a)(1). The fiduciary shield doctrine does not apply. In light of these conclusions, I need not consider any alternative grounds that might apply under the Connecticut long-arm statute.

### Constitutional due process

I next consider whether the exercise of personal jurisdiction over Patel would be fair and reasonable consistent with constitutional due process. A defendant is not subject to a lawsuit in a particular forum unless the defendant has some connection to the territory that delimits the forum court's jurisdiction. *See generally Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945). Thus, "due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* at 316 (cleaned up).

In recent years, the Supreme Court has refined the "minimum contacts" inquiry of *International Shoe* to require that there be a basis for either *general* jurisdiction or *specific* jurisdiction over a defendant. For there to be general jurisdiction, a defendant must be domiciled or essentially at home within the court's territorial district. Alternatively, for there to be specific jurisdiction, the lawsuit must arise from or be related to the defendant's contacts with the court's territorial district. *See generally Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1779-81 (2017).

Because it is undisputed that there is no general jurisdiction over Patel in Connecticut, the relevant inquiry here is whether there are grounds for the exercise of specific jurisdiction. "In order for a court to exercise specific jurisdiction over a claim, there must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State," and "[w]hen there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Id.* at 1781

(cleaned up). Put differently, "the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014).

The record here shows specific jurisdiction. Patel's suit-related conduct is his alleged causing of a misrepresentation with respect to the sale of real property in Connecticut. This was suit-related conduct that bears a substantial connection to Connecticut.

As the Second Circuit has explained, "the exercise of jurisdiction must be reasonable under the circumstances," and a court must consider "whether the assertion of personal jurisdiction would comport with fair play and substantial justice." *U.S. Bank*, 916 F.3d at 150, 151 (internal quotations omitted). When making this evaluation, a court may consider principles of foreseeability—that is, if "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). A defendant should "reasonably anticipate" such litigation when there is "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.* at 474-75 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

The record here shows that it would be reasonable for a court in Connecticut to exercise jurisdiction over Patel. Having involved himself in both the management of and negotiations for the sale of a hotel in Connecticut, Patel could hardly be surprised to find that he might be subject to a lawsuit in Connecticut arising from these very activities. Although Patel complains that it will be burdensome to defend an action in a court that is 3,000 miles away from his home in California, this distance has not deterred him for years from managing a hotel that is just as far away.

Patel argues that his emails were sent to Capozzoli, who was in Massachusetts, not Connecticut. And he argues that much of the sales negotiations occurred even prior to the creation of plaintiff Mystic as a corporate entity. These are collateral details that do not detract from the salient fact for jurisdictional purposes that all of Patel's dealings at issue in this lawsuit had to do with a hotel he helped to manage and sell that was located in Connecticut.

As part of the reasonableness inquiry, I have also considered additional factors including "[1] the burden on the defendant; [2] the interests of the forum State; … [3] the plaintiff's interest in obtaining relief; … [4] the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and [5] the shared interest of the several States in furthering fundamental substantive social policies." *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 173 (2d Cir. 2010) (quoting *Asahi Metal Indus. Co. Ltd. v. Superior Court of California, Solano Cty.*, 480 U.S. 102, 113 (1987) (punctuation and ellipses added)). I find on balance that these factors weigh in favor of requiring Patel to defend against this lawsuit in Connecticut.

## CONCLUSION

For the reasons stated above, the Court DENIES defendant Shivam Patel's motion to dismiss for lack of personal jurisdiction (Doc. #26).

It is so ordered.

Dated at New Haven this 17th day of February 2021.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge